UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK RICHARD THOMAS,

      Petitioner,

v.                                    CASE NO. 8:10-cv-2558-T-23TBM

SECRETARY, Department of Corrections,

      Respondent.

_____/

# O R D E R

      Thomas applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1)

and challenges his conviction for murder in the first degree, for which conviction

Thomas serves life imprisonment without the possibility of parole.  Numerous

exhibits ("Respondent's Exhibit __") support the response.  (Doc. 15)  The respondent

argues that some grounds are not fully exhausted and, as a consequence, the grounds

are procedurally barred from federal review.  The respondent admits the application's

timeliness.  (Response at 6, Doc. 15)

      Thomas and two accomplices were charged with the murder of the store

manager where Thomas worked.  At his separate trial, Thomas was convicted of

felony-murder.  The conviction was reversed because Thomas was entitled to a

requested jury instruction.  *Thomas v. State*, 787 So. 2d 27 (Fla. Dist. Ct. App.), *review

denied*, 796 So. 2d 538 (Fla. 2001).  Thomas was re-tried and again found guilty of

felony-murder.  The present action challenges the validity of the conviction following

the re-trial.

## **FACTS**

The following facts, which are consistent with the facts in Thomas's brief on

direct appeal following the re-trial (Respondent's Exhibit 4), are as found in *Thomas*,

787 So. 2d at 28, from the first appeal:

> Thomas, Matthew Rodriguez and Donald Miller plotted to rob
> Tonya Sargeant, the night manager of a drugstore in St.
> Petersburg where Thomas worked. The plan called for
> Rodriguez and Miller to wait in some bushes next to the store
> parking lot until Sargeant emerged. They would ambush her and
> demand the night's cash receipts, then spray her with mace and
> run to a getaway car waiting down an alley a few blocks behind
> the store. To avoid identification, Thomas was to remain with
> the car. Tragically, when the plan was carried out Sargeant was
> shot to death.
>
> . . . .
>
> Rodriguez, who had been convicted of first degree murder in a
> separate jury trial, testified for the State in Thomas's trial. His
> version implicated Thomas and Miller in a plan that included
> the use of a gun and mace. Rodriguez asserted that Miller had
> supplied him with a friend's gun, and that Thomas had given
> him money with which to buy bullets.
>
> Otherwise, the rest of Rodriguez's story jibed with Thomas's.
> Rodriguez recalled that Miller had left the scene when
> Rodriguez accosted Sargeant. Unexpectedly, Sargeant was
> accompanied by a male coworker, and she did not have the
> night receipts. Rodriguez raised the gun and demanded her
> purse. He recounted that when Sargeant gave him the purse he
> looked over his shoulder for Miller. As he did so, he felt the gun
> discharge.

Additionally, as stated in Thomas's brief on appeal, Rodriguez testified that

Thomas was present during the discussion about possessing the firearm.

Thomas asserts three claims of ineffective assistance of trial counsel,

specifically that counsel violated Thomas's right to testify, that counsel failed to

protect Thomas's *Miranda* rights, and that counsel failed to impeach two witness with

their testimony from the earlier trial. The respondent correctly argues that Thomas

failed to exhaust the latter two and that these two grounds are procedurally barred

from federal review.

## EXHAUSTION AND PROCEDURAL DEFAULT

A petitioner must present each claim to a state court before raising the claim in

federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly

presen[t]' federal claims to the state courts in order to give the State the 'opportunity

to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v.*

*Henry*, 513 U.S. 364, 365 (1995), *quoting Picard v. Connor*, 404 U.S. 270, 275 (1971).

*Accord Rose v. Lundy*, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total

exhaustion rule will encourage state prisoners to seek full relief first from the state

courts, thus giving those courts the first opportunity to review all claims of

constitutional error."), and *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995)

("[T]he applicant must have fairly apprised the highest court of his state with the

appropriate jurisdiction of the federal rights which allegedly were violated."). Also, a

petitioner must present to the federal court the same claim that he presented to the

state court. *Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). "Mere similarity of claims is insufficient to exhaust." *Duncan v. Henry*, 513 U.S. at 366.

A petitioner must alert the state court that he is raising a federal claim and not just a state law claim.

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004). As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted).

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due

to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."); *Kennedy v. Herring*, 54 F.3d 678, 684 (1995) ("If a claim was never presented to the state courts, the federal court considering the petition may determine whether the petitioner has defaulted under state procedural rules."), *appeal after remand, Kennedy v. Hopper*, 156 F.3d 1143 (11th Cir.), *cert. denied sub nom Kennedy v. Haley*, 526 U.S. 1075 (1999).

**<u>Ground Two</u>:**

On direct appeal Thomas asserted that the trial court erred in denying his motion to suppress, in which motion he argued that the detectives failed to honor his request to consult an attorney before questioning.[1]  In his present application Thomas asserts no claim of trial court error.  Instead, Thomas alleges that his trial counsel was ineffective for not preserving his objection to a violation of his *Miranda* rights by the detectives' failing to honor his request to consult an attorney.  Thomas alleged no claim of ineffective assistance of counsel in his state Rule 3.850 motion for post-conviction relief based on the alleged *Miranda* violation.  As a consequence, Thomas procedurally defaulted ground two and the claim is procedurally barred from federal review unless Thomas can overcome the procedural default.

---

[1]  The record shows that questioning ceased when Thomas invoked his right to consult an attorney. However, the interview commenced the following day after Thomas contacted the detectives.

**Ground Three**:

Thomas alleges that trial counsel failed to impeach two state witnesses with their testimony from the earlier trial.  Thomas asserted this claim in his Rule 3.850 motion for post-conviction relief.  The claim was denied as insufficiently pleaded (Respondent's Exhibit 8 at 54-55):

> Claim 4: "Ineffective assistance of trial counsel where counsel failed to use prior in-court statements of witnesses Erika Rodriguez and Sandy Lyon to impeach both witnesses' inconsistent testimony which omission denied Defendant a fair trial where the new and inconsistent statements thwarted Defendant's defense of abandonment and lack of knowledge of co-defendant's possession of a firearm in contravention of Defendant's right to effective counsel and a fair trial pursuant to the United States Constitution Amendments 6. 13.0."
>
> In ground four of his motion, Defendant alleges that his counselors were ineffective in failing to utilize the testimony of two witnesses, Erika Rodriguez and Sandy Lyon, from the prior trial in order to impeach their testimony in the most recent trial. The Defendant fails to identify any testimony from the prior trial which could have been utilized to impeach the testimony of these witnesses during the Defendant's second trial. Absent the identification of certain testimony from the prior trial, the Defendant fails to establish any prejudice which resulted from counsel's failure to utilize the prior testimony to impeach these witnesses. *Compare Armstrong v. State*, 862 So. 2d 705, 712 (Fla. 2003). The Defendant's claim is legally insufficient and shall accordingly be denied.

In his appellate brief from the denial of post-conviction relief Thomas conceded that the claim was "facially insufficient" but argued that the post-conviction court erred by not permitting Thomas an opportunity to correct the defect by amending the motion.  (Respondent's Exhibit 9 at 18)  Thomas neither attempted to amend his motion for post-conviction relief nor attempted to factually support this claim during

the post-conviction evidentiary hearing.  In the answer brief on appeal the state

argued that Thomas failed to preserve this claim by not seeking leave to amend in the

post-conviction court.  (Respondent's Exhibit 10 at 20-21)  The denial of the motion

for post-conviction relief was summarily affirmed in a *per curiam* decision without a

written opinion.  (Respondent's Exhibit 11)  Generally, before a claim is procedurally

barred from federal review, a state court must reject reviewing the incorrectly

presented claim.

> Thus, the mere fact that a federal claimant failed to abide by a
> state procedural rule does not, in and of itself, prevent this Court
> from reaching the federal claim: "The state court must actually
> have relied on the procedural bar as an independent basis for its
> disposition of the case."

*Harris v. Reed*, 489 U.S. 255, 262 (1989) (*quoting Caldwell v. Mississippi*, 472 U.S. 320,

327 (1985)).  *Harris* instructs that the state court opinion must contain "a 'plain

statement' that [the state court's] decision rests upon adequate and independent state

grounds."  *Harris*, 489 U.S. at 261 (*quoting Michigan v. Long*, 463 U.S. 1032, 1042

(1983)).  But this "plain statement" requirement applies only if the state court issued a

reasoned decision.  *Coleman v. Thompson*, 501 U.S. 722, 735-36 (1991).  State courts

are presumed to apply their state procedural rules.

> When a state court issues a summary denial on a claim that is
> procedurally barred and nothing in the disposition discusses the
> merits of the federal claim, we "cannot assume that had the
> [state court] explained its reasoning, it would have reached the
> merits of [the] claim." *Kight v. Singletary,* 50 F.3d 1539, 1545
> (11th Cir. 1995) (citing *Tower v. Phillips,* 7 F.3d 206, 209 (11th
> Cir. 1993)), *see also, Coleman v. Thompson,* 501 U.S. 722, 111 S.
> Ct. 2546, 2557, 115 L. Ed. 2d 640 (1991).

*Zeigler v. Crosby*, 345 F.3d 1300, 1310 (11th Cir. 2003), *cert. denied*, 543 U.S. 842 (2004). Because in opposing the claim asserted in ground three the state argued procedural default, an argument that the appellate court did not reject, the state court is presumed to have applied the state's procedural default rules. *See Zeigler*, 345 F.3d at 1310 ("We cannot conclude that the Florida Supreme Court's summary denial of Zeigler's 1994 habeas petition was a decision on the merits. In responding to Zeigler's 1994 habeas petition, the State's only argument in response to Zeigler's claims was that the claims were procedurally defaulted."). *See also Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir.) ("[W]hen a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default."), *cert. denied*, 490 U.S. 1071 (1989); *Nichols v. Wainwright*, 783 F.2d 1540, 1542 (11th Cir. 1986) ("[T]his court may presume, in the absence of any evidence to the contrary, tha[t] an established default rule which was briefed to a state court was applied by that court when it affirmed a conviction without opinion."). As a consequence, Thomas procedurally defaulted ground three and the claim is procedurally barred from federal review unless Thomas can overcome the procedural default.[2]

---

[2] In the present application Thomas remedies the earlier defect by identifying the testimony he contends counsel should have used to impeach each witness. Nevertheless, the claim is procedurally defaulted because presenting a claim to a state court without the facts necessary to support the claim fails the exhaustion requirement. *See, e.g., Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983) ("The exhaustion requirement is not satisfied if a petitioner presents new legal theories or entirely new factual claims in support of the writ before the federal court.").

To overcome procedural default, Thomas must establish either (1) "cause for the default and prejudice attributable thereto" or (2) "that failure to consider [the defaulted] claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989).

To demonstrate "cause" for his procedural default, Thomas must justify his failure to comply with Florida's procedural rules. In general, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." *Murray v. Carrier*, 477 U.S. at 488. *See Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). Even if he shows cause for his procedural default, Thomas must show prejudice arising from the alleged constitutional error. A petitioner must show that he suffered actual prejudice, "not merely that the errors of the trial created a <u>possibility</u> of prejudice, but that they worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis original). *Accord Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991). In essence, to show actual prejudice, Thomas must demonstrate that the alleged errors so infected the trial that his resulting conviction violates due process. Thomas fails to meet his burden.

As an alternative to showing "cause and prejudice," Thomas must show that dismissal of his procedurally defaulted grounds will result in a "fundamental miscarriage of justice," an especial difficulty because Thomas must demonstrate

"actual innocence" of the crime of conviction.  *See Smith v. Murray*, 477 U.S. 527, 537 (1986) (citing *Murray v. Carrier*, 477 U.S. at 496).  *See also Engle v. Isacc*, 456 U.S. 107, 134-35 (1982), and *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)[3] (denying a certificate of probable cause and holding that a petitioner must show "as a factual matter that he did not commit the crime of conviction.").  Additionally, to meet the "fundamental miscarriage of justice" exception, Thomas must show constitutional error coupled with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Thomas meets neither the "cause and prejudice" nor the "fundamental miscarriage of justice" exception to procedural default.  Consequently, grounds two and three are procedurally barred from review on the merits.  Ground one is the only claim entitled to a review on the merits.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

---

[3]  Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786-87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Thomas's convictions and sentence.  (Respondent's Exhibit 6)  Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Thomas's subsequent Rule 3.850 motion to vacate.  (Respondent's Exhibit 11)  The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due."  *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255-56 (11th Cir. 2013) (explaining the difference between an "opinion" or "analysis" and a "decision" or "ruling" and that deference is accorded the state court's "decision" or "ruling" even if there is no "opinion" or "analysis").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of,

> established law. This backward-looking language requires an
> examination of the state-court decision at the time it was made.
> It follows that the record under review is limited to the record in
> existence at that same time, i.e., the record before the state
> court.

*Pinholster*, 131 S. Ct. at 1398. Thomas bears the burden of overcoming by clear and

convincing evidence a state court factual determination. "[A] determination of a

factual issue made by a State court shall be presumed to be correct. The applicant

shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness

applies to a finding of fact but not to a mixed determination of law and fact. *Parker v.*

*Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state

court's rejection of Thomas's post-conviction claims warrants deference in this case.

(Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 8 at 17-18)

## INEFFECTIVE ASSISTANCE OF COUNSEL

Thomas claims ineffective assistance of counsel, a difficult claim to sustain.

"[T]he cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d

1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th

Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective

assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well
> settled and well documented. In *Strickland v. Washington*, 466
> U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme
> Court set forth a two-part test for analyzing ineffective assistance

> of counsel claims. According to *Strickland*, first, the defendant
> must show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced the defense. This
> requires showing that counsel's errors were so serious as to
> deprive the defendant of a fair trial, a trial whose result is
> reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Thomas must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Thomas must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. Thomas cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v.*

*Kemp*, 483 U.S. 776, 794 (1987)).  *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983)

(counsel has no duty to raise a frivolous claim).

Thomas must prove that the state court's decision was "(1) . . . contrary to, or

involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States or (2) . . . based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding."  28 U.S.C. § 2254(d).  Sustaining a claim of ineffective assistance

of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d)

are both 'highly deferential,' and when the two apply in tandem, review is 'doubly'

so."  *Richter*, 131 S. Ct. at 788.  *See also Pinholster*, 131 S. Ct. at 1410 (An applicant

must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."),

and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double

deference is doubly difficult for a petitioner to overcome, and it will be a rare case in

which an ineffective assistance of counsel claim that was denied on the merits in state

court is found to merit relief in a federal habeas proceeding.").

In summarily denying Thomas's motion for post-conviction relief, the state

court specifically recognized that *Strickland* governs a claim of ineffective assistance of

counsel.  (Respondent's Exhibit 8 at 17)  Because the state court rejected the claims

based on *Strickland*, Thomas cannot meet the "contrary to" test in Section 2254(d)(1).

Thomas instead must show that the state court unreasonably applied *Strickland* or

unreasonably determined the facts.  In determining "reasonableness," a federal

application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). The presumption of correctness and the highly deferential standard of review requires that the analysis of ground one begin with the state court's analysis.

**Ground One**:

Thomas alleges that trial counsel failed to protect Thomas's right to testify in his own defense. The post-conviction court summarily rejected this claim as follows (Respondent's Exhibit 8 at 3-5) (citations to transcript omitted):

> Claim 1: "Ineffective assistance of trial counselors for interfering with defendant's right to testify by affirmatively misadvising the defendant that there was evidence to support an acquittal under the abandonment doctrine and the independent act doctrine which denied the defendant a fair trial in contravention of the United States Constitution Amendments 6, 14."
>
> In ground one of his motion, Defendant states that his trial counsel interfered with his right to testify by advising him that there was sufficient evidence upon which to base defenses that Defendant abandoned the crime and that the crime was committed independently by a co-defendant. Defendant claims that his counsel merely relied upon the State's evidence in order to attempt to show that Defendant either abandoned the crime or that the crime was committed independently by someone else. Thus, Defendant alleges that his trial counsel pursued an unsound trial strategy, where Defendant could have allegedly offered additional testimony in support of defenses of abandonment and independent act. Similarly, Defendant alleges that his counsel's misadvice rendered Defendant's decision not to testify involuntary.

> In response, the State submits that the Defendant was present throughout the trial and therefore could evaluate for himself whether to testify based on the evidence. The State further asserts that the Defendant's claim is refuted by the record, wherein the court inquired as to whether Defendant's decision not to testify was made freely and voluntarily.
>
> The crux of Defendant's claim is that the State's witnesses changed their testimony at trial in such a way that the defenses of abandonment and the independent act doctrine were no longer viable. Specifically, Defendant contends that the testimony at trial would prove that Defendant had abandoned the robbery and that co-defendant Rodriguez had acted alone when he killed Ms. Sargeant. The Defendant was present throughout the trial and observed the testimony of the State's witnesses. Aware of the testimony at trial, the Defendant acknowledged under oath that he was knowingly and voluntarily waiving his right to testify, and that he had consulted with counsel on the issue. The court therefore finds that the record conclusively refutes the Defendant's claim that counsel interfered with his right to testify. Ground one of the Defendant's Motion for Post-conviction Relief shall accordingly be denied.

A criminal defendant possesses a fundamental constitutional right to testify at trial. *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987). "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992). *See also Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999) (holding that ineffective assistance occurs when (1) counsel refuses to honor a defendant's decision to testify or (2) counsel fails to inform a defendant that he has a right to testify and that the final decision whether to testify is the defendant's alone). "Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the

action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf." *Teague*, 953 F.2d at 1534.

The trial transcript supports the post-conviction court's finding that, after consulting with his trial counsel, Thomas knowingly and voluntarily waived his right to testify. (Respondent's Exhibit 2 at vol. V, p. 548-49)  "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  The state court reasonably applied *Strickland* in determining that trial counsel's performance was not deficient.

Accordingly, Thomas's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Thomas and close this case.

### DENIAL OF BOTH
### A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Thomas is not entitled to a certificate of appealability ("COA").  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a COA, Thomas must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926,

935 (11th Cir 2001).  Thomas is not entitled to appeal *in forma pauperis* because he is not entitled to a COA.

Accordingly, a certificate of appealability is **DENIED**.  Leave to proceed *in forma pauperis* on appeal is **DENIED**.  Thomas must pay the full $505 appellate filing fee without installments unless the circuit court allows Thomas to proceed *in forma pauperis*.

ORDERED in Tampa, Florida, on April 7, 2014.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE